UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHARLES CORBISHLEY,

                 Plaintiff,                          **COMPLAINT**

      -against-                            **JURY TRIAL DEMANDED**

ANDREW NAPOLITANO,

                 Defendant.
-------------------------------------------------------------------X

        Plaintiff CHARLES CORBISHLEY ("Plaintiff" or "Mr. Corbishley"), by his attorney JOSEPH & NORINSBERG, LLC, brings this action against defendant ANDREW NAPOLITANO ("Napolitano" or "Defendant"), alleging, on personal knowledge as to him, and on information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

        1.     Plaintiff brings this civil action seeking compensatory damages, punitive damages and attorney's fees pursuant to New Jersey Law C.2A:14-2B ("C.2A:14-2B"), as a result of being forcibly sodomized and sexually assaulted by defendant Napolitano, who was a state court judge in New Jersey presiding over Plaintiff's criminal case when the assault occurred.

## JURY DEMAND

        2.     Plaintiff demands a trial by jury on all issues so triable.

## JURISDICTION AND VENUE

        3.     This Court has jurisdiction over the parties under 28 U.S.C. § 1332, since Plaintiff is a resident of the State of South Carolina, and Defendant is a resident of the State of New York, and the amount in controversy exceeds $75,000.00.

4. Venue is properly placed in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(b)(1), since defendant Napolitano resides in the County, City and State of New York.

### N.J. C.2A:14-2B: COMMENCEMENT OF ACTIONS REGARDLESS OF STATUTE OF LIMITATIONS

5. Each of Plaintiff's causes of action is timely pursuant to New Jersey Statute C.2A:14-2B, which was enacted on May 13, 2019, and went into effect on December 1, 2019. Plaintiff alleges that the Defendant committed intentional acts which resulted in Plaintiff suffering physical, psychological or other injuries or conditions as a direct and proximate result of conduct which constitutes a sexual offense committed against his person, as defined in Section 1 of P.L. 1992, c. 109, as amended on May 13, 2019. This action, moreover, has not been filed until after the effective date of December 1, 2019.

6. Unlike New York's analogous "Child Victims Act," New Jersey's sexual abuse statute specifically allows for victims who were over eighteen (18) when the abuse occurred to file suits that would otherwise be time-barred.[1] Specifically, under P.L. 2019c.120 (C.A:14-2a et al.), the statute of limitations is extended for sexual assault victims who were 18 years of age or older when the sexual abuse occurred.

### PARTIES

7. Plaintiff CHARLES CORBISHLEY is an individual currently residing in the state of South Carolina.

8. At all relevant times, Plaintiff was a resident of Hackensack, in the County of Bergen, in the State of New Jersey.

---

[1] https://www.northjersey.com/story/news/new-jersey/2019/05/13/nj-extends-statute-limitations-child-abuse-cases/1183930001/

9. Defendant ANDREW NAPOLITANO is an attorney duly licensed to practice law in the State of New Jersey, and who was, at all relevant times, a New Jersey Superior Court Justice.

10. At all relevant times, Defendant NAPOLITANO was the presiding Justice on a pending criminal action against plaintiff CHARLES CORBISHLEY.

## STATEMENT OF FACTS

11. Plaintiff CHARLES CORBISHLEY is a successful business owner who runs a cleaning services company in Myrtle Beach, South Carolina. Mr. Corbishley also does search engine optimization ("SEO") for several companies, including SEO coding, website designs and graphic designs for these clients.

12. As a young man, Plaintiff CHARLES CORBISHLEY had a difficult family life, and he was frequently in and out of trouble with the law as a teenager and a young man.

13. During the times relevant to the allegations set forth herein, Plaintiff CHARLES CORBISHLEY was facing arson charges stemming from a three-count indictment in November 1987.

**Plaintiff Retains Robert A. Hollis, Esq., to Defend Him Against Criminal Charges.**

14. Thereafter, Plaintiff retained the services of Robert A. Hollis, Esq. ("Hollis"), a criminal defense attorney.

15. Unbeknownst to Mr. Corbishley, Hollis was running a national prostitution ring at the time.

16. Hollis' unlawful activities were detailed at length in an article in New York Magazine, dated July 22, 1996. (Ex. A).

17. In this article, entitled "the Screwball Scheme," New York Magazine referred to Hollis as a "lawyer of remarkable incompetence" and a "disgraced attorney," who was "second in

command" in a massive, sixteen (16) million-dollar prostitution and money laundering ring.  (Id.).

18. In 1998, Hollis pled guilty to federal money laundering charges for prostitution rings, and served an eighteen-month prison sentence.

19. Apart from his criminal activities, Mr. Hollis also had been suspended from the New Jersey bar on multiple occasions, from 1982 to 1985, from 1993 to 1996, and for all of 1998. In the 1993 matter, Hollis was found to have engaged in conduct "involving dishonesty, fraud, deceit or misrepresentation."

**Hollis Gets Plaintiff's Criminal Case Switched Over to Judge Napolitano, Whom He Refers to as "My Friend."**

20. Shortly after Hollis took over Mr. Corbishley's case, the criminal matter was suddenly transferred to the courtroom of Defendant ANDREW NAPOLITANO.

21. After the case was switched to Defendant NAPOLITANO, Hollis told Plaintiff that "*he's my friend*" and "*I can take care of your case now*."

22. After the case was transferred to Defendant NAPOLITANO, Hollis instructed Plaintiff to plead guilty to all three counts of the indictment. There was no plea arrangement, Plaintiff simply pled guilty to all three counts of the indictment.

23. Through his position as a New Jersey Superior Court Justice, Defendant NAPOLITANO was thus put in direct contact with Plaintiff CHARLES CORBISHLEY.

**Plaintiff is Sexually Assaulted by Judge Napolitano in December 1988.**

24. Mr. Hollis used his position as Plaintiff's criminal defense attorney to arrange for Plaintiff CHARLES CORBISHLEY to have a private, *ex parte*, meeting with Defendant ANDREW NAPOLITANO at a residence located in Hackensack, NJ, in or about December 1988.

25. This residence was owned/leased/rented and/or borrowed by Defendant Napolitano and/or Robert Hollis, so as to arrange for a clandestine location where Napolitano could meet privately with Corbishley.

26. Under the direction and advice of his attorney Mr. Hollis, Mr. Corbishley went to the residence, located in Hackensack, New Jersey, to meet Defendant ANDREW NAPOLITANO.

27. Mr. Corbishley was instructed to bring a snow-shovel, as well as a Christmas card for Defendant NAPOLITANO.

28. Mr. Corbishley complied with his attorney's request, and went to the residence as he had been instructed.

29. Upon arrival at the residence, Mr. Corbishley rang the doorbell, and Defendant answered the door. Plaintiff then handed over the Christmas card to Defendant ANDREW NAPOLITANO and told him that he was there to shovel snow.

30. Defendant NAPOLITANO greeted Plaintiff by name, asking him: "how are you doing Charlie?"

31. Defendant NAPOLITANO then instructed Plaintiff to shovel the driveway, starting out in the front and then to work his way around the house.

32. Plaintiff found this request to be peculiar, because the driveway already had been shoveled, and there did not appear to be any heavy snow around the house that needed shoveling. In fact, all Plaintiff could see was a layer of ice on the ground, but there was little, if any snow, around the house.

33. Thereafter, Plaintiff CHARLES CORBISHLEY lit a cigarette and pondered what to do next. He did not understand why he had been asked to come over to this house and shovel snow for Judge Napolitano, since it was clear that there was no snow that needed to be shoveled.

34. Shortly thereafter, Defendant NAPOLITANO came outside, dressed in a long trench coat. Defendant Napolitano then called out to Plaintiff and summoned him to come to the side of the house, saying "can you come back here for a minute?"

35. Plaintiff then walked over to the side of the house where Defendant NAPOLITANO was standing.

36. Defendant NAPOLITANO then proceeded to make small talk with Plaintiff, asking about his family life, and the family-owned pharmacy in town, Mira Pharmacy.

37. Defendant NAPOLITANO then approached Plaintiff CHARLES CORBISHLEY, and stated "you know, you could be going away for a *long time*."

38. As Defendant was speaking to Plaintiff, he proceeded to place his hand on Plaintiff's shoulder, and forced Plaintiff to his knees. As he pushed Plaintiff down toward the ground, Defendant told Plaintiff to "be a good boy."

39. At this point, Defendant NAPOLITANO appeared to be masturbating through his clothing, moving his hand back and forth over his penis. Thereafter, Defendant NAPOLITANO pulled his erect penis out.

40. Plaintiff Charles Corbishley was then forced to perform fellatio on the Honorable Andrew Napolitano, the presiding Justice on his criminal case.

41. At this moment, Plaintiff was paralyzed with fear. He wanted desperately to stop Defendant NAPOLITANO's sexual assault, but he was terrified about what Judge Napolitano would do to him if he resisted or fought back.

42. Based on the power disparity between Judge Napolitano and Corbishley, it was impossible for Plaintiff CHARLES CORBISHLEY to have "consented" to any sexual activities with NAPOLITANO.

43. Based on the power disparity between Judge Napolitano and Corbishley, it was impossible for Plaintiff CHARLES CORBISHLEY to be a "willing partner" in any type of sexual encounter with NAPOLITANO.

44. As Defendant began to ejaculate into Plaintiff's mouth, Plaintiff took off crying and ran away. Plaintiff was only 20 years old at the time of this sexual assault. (Ex. B, Photo of Plaintiff).

45. Plaintiff then stopped by a nearby diner and desperately tried to clean himself and remove the semen from his clothing, face and mouth.

46. About two days later, Mr. Corbishley spoke to Mr. Hollis. During this conversation, Mr. Hollis intimated that he knew exactly what had happened between Judge Napolitano and Mr. Corbishley. Specifically, Hollis told Mr. Corbishley something to the effect that "*we both have him now*," and "*don't worry about anything*."

**After Forcibly Sodomizing Plaintiff, Judge Napolitano Rewards Him with an Extremely Light Sentence.**

47. After the sexual assault, Mr. Corbishley, on the advice of Hollis, pled guilty to all three counts of the indictment.

48. In connection with this plea, the bottom two criminal charges were dismissed, and the top charge was amended.

49. Judge Napolitano then imposed a remarkably lenient sentence, allowing Mr. Corbishley to avoid any jail time whatsoever, and instead, imposing a sentence of five-year's probation, with 150 hours of community service.

50. This sentence was exceptionally light, given the serious nature of the underlying criminal charges -- arson, burglary of a motor vehicle, and aggravated arson -- as well as Plaintiff's prior juvenile arson charge.

51.     By comparison, Edward Weedo -- Mr. Corbishley's co-defendant in the case, who was indicted on the *exact same* three criminal charges (Indictment No. S-0230-88) -- was sentenced to several <u>years</u> in prison for committing the same crimes.

52.     Mr. Weedo had been represented by Waltern Kern, Esq., a well-known and highly respected criminal defense attorney in New Jersey.

53.     By comparison, Mr. Corbishely had been represented by Hollis, a "lawyer of remarkable incompetence." (Ex. A).  Yet, somehow, Hollis was able to get a much better outcome for his client than Kern.

54.     Not only did Judge Napolitano impose a much lighter sentence on Corbishley than on Weedo, but also, he ordered that any future violations of probation by Corbishley would be brought directly to him, and not to another judge.

**<u>Plaintiff Repeatedly Violates His Probation, But Judge Napolitano Looks the Other Way and Actually Vacates the Order of 150 Hours of Community Service</u>**

55.     Thereafter, Plaintiff violated his probation and was sentenced on August 8, 1991, to two additional years' probation, with mandatory drug tests.

56.     At this re-sentencing hearing, Defendant Napolitano simply *vacated* Mr. Corbishley's one hundred fifty hours community service.

57.     That same month, immediately after this sentencing, Plaintiff failed three separate drug tests -- one on August 14, 1991, another on August 28, 1991, and a third one on September 14, 1991 -- with each one of these failed tests constituting a violation of his probation.

58.     Thereafter, on September 15, 1991, Plaintiff was arrested on narcotic and firearms charges.

59.     Plaintiff pled guilty to these charges.

**Defendant Napolitano Suddenly Terminates Plaintiff's Probation, Despite the Serious Pending Criminal Charges and Multiple Violations of Probation.**

60. Thereafter, Hollis, the facilitator of plaintiff's sexual assault -- and the one who had told Plaintiff that "*we both have him now*" and "*don't worry about anything*" -- filed a motion to terminate Plaintiff's probation altogether on January 3, 1992.

61. Shockingly, Defendant NAPOLITANO granted the motion in its entirety, and simply released Plaintiff, stating his reasons for doing so as follows: "The Court finds that *the defendant has been burdened with probation long enough given the nature of the original offense,* and that further probation would be fruitless and frustrative for both the defendant and probation department."

62. Defendant NAPOLITANO's decision to simply release Plaintiff based on Hollis' motion -- despite the serious weapons and narcotics charges against CORBISHLEY, and the three interim violations of probation -- is further evidence of NAPOLITANO'S improper preferential treatment toward Plaintiff.

63. NAPOLITANO's leniency was a deliberate and calculated attempt to create "good will" with Plaintiff, and thereby ensure that Plaintiff would remain silent about Defendant NAPOLITANO'S sexual assault of him.

**Defendant Napolitano Contacts Law Enforcement Authorities and Manufactures False Claims Against Plaintiff, In Order to Stop Him from Filing This Lawsuit.**

64. In a brazen attempt to intimidate Plaintiff and stop him from filing this lawsuit, Defendant NAPOLITANO recently reached out to law enforcement authorities and made completely false criminal accusations against Plaintiff.

65. Specifically, Defendant NAPOLITANO contacted law enforcement authorities in New Jersey (Detective Michael Braccioforte) and/or in South Carolina (Detective "John" Sotile),

and told the police that Plaintiff had made threats of violence against him.

66. These claims were outright fabrications. Plaintiff never made any threats whatsoever, of any kind, against defendant NAPOLITANO.

67. In fact, Plaintiff has not seen or spoken to Defendant NAPOLITANO in almost thirty (30) years, and has had no contact whatsoever with him during this time period.

68. Defendant NAPOLITANO made up these outrageous claims for the purpose of harassing, intimidating and silencing Plaintiff, and deterring him from filing this lawsuit.

69. Defendant NAPOLITANO wanted to "send a message" to Mr. Corbishley that if Plaintiff went ahead and filed this lawsuit, Defendant NAPOLITANO would use his power and influence to have CORBISHLEY arrested and prosecuted.

70. As a result of Defendant NAPOLITANO's baseless criminal accusations, the police reached out to several members of Plaintiff's family, including his mother, sister and aunt, and told them that they were investigating a claim that Mr. Corbishley had made threats against a judge in New Jersey.

71. Such actions caused Plaintiff to suffer severe emotional distress and embarrassment. In the past two decades, Mr. Corbishley had worked very hard to become a respectable and productive member of society, and to put his criminal past behind him. Yet, as a direct result of NAPOLITANO's manufactured "threat" claims, it now made Plaintiff's family think that he had done something wrong and was in trouble with the law again. This, by itself, caused Plaintiff to experience severe emotional distress above and beyond the trauma caused by Napolitano's original assault.

**Defendant Attempts to Harass and Intimidate One of Plaintiff's Witnesses.**

72. Defendant NAPOLITANO not only attempted to harass and intimidate Plaintiff,

but also, he engaged in similar conduct toward one of Plaintiff's witnesses.

73. Upon information and belief, after learning the identity of one of the witnesses upon whom Plaintiff intended to rely, Defendant NAPOLITANO, either himself or through a third party working on his behalf, disclosed the name of this witness to law enforcement authorities in New Jersey, who in turn contacted the police in Pennsylvania, where the witness resided.

74. Thereafter, the Pennsylvania police tracked down this witness and went to his home, and started to aggressively question him regarding the whereabouts of Charles Corbishley. Following this encounter, the witness was extremely upset and unnerved by his interaction with the police.

75. As a direct result of all of Defendant NAPOLITANO's conduct described herein, Plaintiff CHARLES CORBISHLEY has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, and physical manifestations of emotional distress.

76. Mr. Corbishley has recently been diagnosed by a forensic psychologist as suffering from "pronounced symptoms related to PTSD" as a result of being sexually assaulted. According to this psychologist, "it is clear that having been *sexually abused by the defendant has left a negative, indelible [and] traumatic impact on Mr. Corbishley's life*." Indeed, Mr. Corbishley "continues to suffer from a host of rather *serious post-traumatic stress disorder symptoms* which have compromised his ability to adequately cope with life and to take good care of himself."

77. Since the date of this sexual assault, Plaintiff CHARLES CORBISHLEY has been tormented by recurring thoughts of committing suicide and hanging himself.

78. Further, as a result of this assault, Plaintiff has developed a host of serious physical

ailments that are directly related to the severe anxiety and emotional distress that he suffered from the sexual assault.

79. In short, as a direct result of Napolitano's sexual assault on him, Plaintiff CHARLES CORBISHLEY has suffered severe, permanent and irreparable emotional and physical harm, and will continue to do so for the remainder of his life.

### FIRST CLAIM FOR RELIEF
### Sexual Assault Under New Jersey Law

80. Plaintiff CHARLES CORBISHLEY repeats and realleges each and every allegation set forth above as if fully set forth herein.

81. Defendant ANDREW NAPOLITANO did sexually assault, sexually abuse, and/or have sexual contact with Plaintiff in violation of the laws of the State of New Jersey.

82. By sexually assaulting, sexually abusing, and/or having sexual contact with Plaintiff, Defendant ANDREW NAPOLITANO placed Plaintiff in imminent and reasonable apprehension of harmful and offensive contact.

83. By sexually assaulting, sexually abusing, and/or having sexual contact with Plaintiff, Defendant ANDREW NAPOLITANO acted so as to cause repeated unjustified, harmful and offensive physical contact with Plaintiff.

84. As a direct result of Defendant's conduct, Plaintiff has suffered the injuries and damages described herein.

85. By reason of the foregoing, Defendant is liable to Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

### SECOND CLAIM FOR RELIEF
### Assault Under New Jersey Law

86. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

87. Defendant's aforementioned actions placed Plaintiff CHARLES CORBISHLEY in apprehension of imminent harmful and offensive bodily contact.

88. As a result of the foregoing, Plaintiff CHARLES CORBISHLEY sustained, *inter alia*, assault, battery, severe emotional distress, embarrassment, humiliation, physical pain and mental anguish, together with shock, fright, and apprehension.

**THIRD CLAIM FOR RELIEF**
**Battery Under New Jersey Law**

89. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

90. Defendant ANDREW NAPOLITANO touched Plaintiff in a harmful and offensive manner.

91. Defendant did so without privilege or consent from Plaintiff CHARLES CORBISHLEY.

92. As a result of the foregoing, Plaintiff CHARLES CORBISHLEY sustained, *inter alia*, assault, battery, severe emotional distress, embarrassment, humiliation, physical pain and mental anguish, together with shock, fright, and apprehension.

**FOURTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress Under New Jersey Law**

93. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

94. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

95. The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to Plaintiff.

96. As a result of the aforementioned conduct, Plaintiff CHARLES CORBISHLEY

suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, and fright.

**WHEREFORE,** Plaintiff CHARLES CORBISHLEY hereby demands judgment against the Defendant on each cause of action as follows:

- A. Awarding compensatory damages in an amount of $5,000,000.00;

- B. Awarding punitive damages in an amount of $5,000,000.00;

- C. Awarding costs and fees of this action, including attorneys' fees to the extent permitted by law;

- D. Awarding prejudgment interest to the extent permitted by law; and

- E. Awarding such other and further relief as to this Court may seem just and proper.

Dated: New York, New York
September 10, 2020

JOSEPH & NORINSBERG, LLC

BY: _____
Jon L. Norinsberg, Esq.
*Attorneys for Plaintiff*
110 E. 59th Street, Suite 3200
New York, N.Y. 10022
(212) 227-5700